1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT ELMER BARBER,

11           Petitioner,                        No. CIV S-04-1844 MCE EFB P

12       vs.

13   WARDEN OF THE SUBSTANCE
     ABUSE TREATMENT FACILITY,
14
             Respondent.[1]                     FINDINGS AND RECOMMENDATIONS
15   _____/

16        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2001 judgment of conviction

18   entered against him in the Shasta County Superior Court on numerous counts of lewd and

19   lascivious acts with minors.  He seeks relief on the grounds that: (1) his prosecution violated his

20   federal constitutional rights because it was "time barred;" (2) the trial court violated his right to

21   due process when it failed to submit alternative verdicts to the jury; (3) the trial court violated

22   the Ex Post Facto Clause and petitioner's right to due process when it admitted evidence of prior

23
          [1]  Previously named as respondent was McGregor William Scott.  The court now
24   substitutes in the correct respondent, the Warden of the Substance Abuse Treatment Facility at
     the California State Prison-Corcoran, where petitioner is presently incarcerated. "A petitioner for
25   habeas corpus relief must name the state officer having custody of him or her as the respondent
     to the petition."  *Stanley v. California Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994) (citing
26   Rule 2(a), 28 U.S.C. foll. § 2254).

uncharged acts of sexual offenses; (4) his conviction with respect to two victims was not supported by sufficient evidence; (5) he received ineffective assistance of appellate counsel; and (6) his trial counsel rendered ineffective assistance when he failed to object to the prosecutor's use of false testimony, failed to cross-examine witnesses or call favorable witnesses, and failed to ensure that the jury instructions were "proper."  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

## I.    Procedural and Factual Background

In its unpublished opinion affirming petitioner's judgment of conviction on appeal[2], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> The prosecution alleged defendant molested S.W., B.M., D.H., and M.O. between 1990 and 1996.  We summarize the facts surrounding the alleged acts of sexual abuse where necessary to our discussion of sufficiency of the evidence.
>
> The molestations came to light over a period of more than a year. Toward the end of 1996, B.M. told his girlfriend and mother what defendant had done to him.  They reported the matter to the Shasta County Sheriff on December 17, 1996.  Deputy Leonard Felter, a sex crimes investigator, talked with defendant on the telephone on January 6, 1997.  Felter arranged to meet with him the next day, but defendant did not show up.  Instead, he borrowed a truck from a friend on the pretext of visiting a sick friend in the Bay Area and fled to Mexico.  Defendant telephoned Deputy Felter on January 16, 1997, and confirmed that he was in Mexico.
>
> The district attorney filed a criminal complaint against defendant on January 24, 1997, for unlawful acts involving B.M. and D.H. in case No. 97-533.  An arrest warrant issued.  The complaint was later amended on April 1, 1997, to add a count involving the molestation of M.O.
>
> In December 1997, S.W. and his girlfriend contacted the Shasta County Sheriff about the sexual abuse of S.W. by defendant.  The district attorney filed a criminal complaint on December 19, 1997,

---

[2]  Notice of Lodging Documents on October 24, 2005, Resp.'s Lodg. Doc. 10 (hereinafter Opinion).

1    in case No. 97-9186.  The complaint alleged five counts of sexual
     molestation involving S.W.[3]  An arrest warrant issued the same
2    date.

3    In July 2000, Arizona investigators found defendant in Mexico,
     where he had been living under an assumed name.  Investigators
4    discovered defendant's true identity through fingerprint analysis.
     Thereafter, defendant was arrested and returned to the United
5    States with the assistance of Mexican authorities.

6    The district attorney filed an amended, consolidated
     complaint-deemed-information on November 16, 2000.  The
7    information included allegations involving all four victims, and
     increased the number of counts relating to S.W.  Jury trial began
8    on January 9, 2001.

9         On January 26, 2001, petitioner was convicted on all counts.  Lodg. Doc. 1; Clerk's

10   Transcript on Appeal (hereinafter CT), at 260-95.  On March 8, 2001, petitioner was sentenced

11   to 73 years in state prison.  CT at 342-49, 352-55.

12        Petitioner appealed from his conviction to the California Court of Appeal for the Third

13   Appellate District, claiming that: (1) there was insufficient evidence to sustain his convictions on

14   counts 1 through 23, count 31, and count 32; (2) there was insufficient evidence to show the

15   offenses charged in counts 1 through 23 and count 32 occurred within the applicable statute of

16   limitations; (3) alternatively, counts 1 through 23 and count 32 should be remanded to the trial

17   court for a hearing to determine whether they were time-barred; (4) the trial court erred in

18   instructing the jury on the statute of limitations; (5) the trial court erred in failing to submit count

19   1 and counts 2 through 11 to the jury in the alternative; and (6) application of Cal. Evidence

20   Code § 1108 to counts 1 through 27 and count 32 violated the prohibition against ex post facto

21   laws.  Lodg. Doc. 10, at 2.  On November 27, 2002, petitioner's judgment of conviction was

22   affirmed as to 28 counts and reversed as to 4 counts (1, 12, 13, and 32).  *Id.*

23

24        [3]  The complaint alleged two counts of lewd or lascivious acts with a child under 14 (§
     288, subd. (a)), two counts of oral copulation with a person under 16 (§ 288a, subd. (b)(2)), one
25   count of possession of a firearm by a felon (§ 12021, subd. (a)(1)), and one count of distributing
     or exhibiting harmful material to a minor. (§ 313.1.)
26

On December 2, 2002, petitioner filed a petition for rehearing in the California Court of Appeal. Lodg. Doc. 11. That petition was summarily denied by order dated December 19, 2002. Lodg. Doc. 12. On December 27, 2002, petitioner filed a petition for review in the California Supreme Court. Lodg. Doc. 13. That petition was summarily denied by order dated February 11, 2003. Lodg. Doc. 14.

On August 26, 2002, petitioner filed a petition for writ of habeas corpus in the Shasta County Superior Court, claiming that he received ineffective assistance of trial and appellate counsel. Lodg. Doc. 15. That petition was denied on August 28, 2002, on the grounds that petitioner had named the wrong respondent. Lodg. Doc. 16. On September 9, 2002, petitioner filed a document entitled "Traverse" in the Shasta County Superior Court. Lodg. Doc. 17. The Superior Court ordered that the traverse be "marked received but not filed." Lodg. Doc. 18.

On October 24, 2002, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, claiming, among other things, that he received ineffective assistance of trial and appellate counsel. Lodg. Doc. 19. That petition was summarily denied by order filed November 14, 2002. Lodg. Doc. 20. On July 31, 2003, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, also raising claims of ineffective assistance of trial and appellate counsel. Lodg. Doc. 21. That petition was summarily denied by order dated May 12, 2004. Lodg. Doc. 22.

On December 6, 2004, petitioner filed his federal habeas petition in this court. Respondent filed an answer on October 24, 2005. Petitioner filed a traverse on February 24, 2006.

II.   **Analysis**

A.  **Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

////

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

////

5

**B. Petitioner's Claims**

**1. <u>Prosecution Barred by State Statute of Limitations</u>**

In his first claim, petitioner argues that his prosecution violated the Double Jeopardy Clause and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because some of the charges against him were filed after the state statute of limitations had expired.  Pet. at 5, 8.  Petitioner explained this claim more fully in his petition for writ of habeas corpus filed in the California Supreme Court:  "Does Penal Code section 803(b), which tolls the statute of limitations when prosecution against the same defendant for the 'same conduct' is pending, embrace only crimes committed in the same transaction of events as the charges pending, or does it embrace also the 'same type' of crimes, so that, for example, sexual abuse on a minor may be deemed the 'same conduct' although these acts, clearly and distinctly separated in time, place and occasion, are not part of the same transaction of events as the pending crimes?"  Lodg. Doc. 13 at 1-2.  Petitioner further explained:

> Appellant's arguments [on direct appeal] were predicated on a commencement date for the prosecution with the filing of the information on November 16, 2000.  In sum appellant argued [on direct appeal] that, even taking into account a sojourn in Mexico . . . which may (or may not) have tolled the statute of limitations for as much as three years (§803(d)) (footnote omitted), some of the counts (1, 5-11) were still barred as a matter of law, while some *may* have been barred.  In the case of these latter, the jury could not determine the factual matter correctly because the trial court instructed them erroneously that the prosecution, as a matter of law, commenced, not with the filing of the information but with the issuance of an arrest warrant on December 19, 1997.  (citation omitted.)

> The court of appeal agreed with the trial court.  The warrant, although not issued for the exact same crimes charged, was issued for the "same conduct."  Therefore, prosecution was "pending," within the meaning of Section 803(b), which tolled the statute of limitations.  (citation omitted.)  As will be seen, however, the court of appeal's interpretation of "same conduct" is problematical because the crimes eventually charged consisted in conduct that was completely separate in time, place, and occasion from the conduct described in the warrant, and such an expansive interpretation of the meaning of "same conduct" is not well supported by the statute or the rules of statutory interpretation.

1   *Id.* at 3-4.[4]

2       Citing only state law, the California Court of Appeal rejected these challenges to

3   petitioner's conviction on statute of limitations grounds, reasoning as follows:

4           **B. Statute of Limitations:**

5         "Because the statute of limitations is jurisdictional and need not be
      specially pleaded as a defense, the defendant's plea of not guilty

6         raises the issue.  The burden is then on the prosecution to prove, by
      a preponderance of the evidence, that the ... information or

7         complaint [was] filed within the prescribed period after
      commission of the offense."  (1 Witkin & Epstein, Cal.Criminal

8         Law (3d ed. 2000) Defenses, § 218, p. 581.)

9         The statute of limitations for violations of section 288.5 is six
      years from the date the crime was committed.  (§§ 288.5, 800.)

10        For a continuous course-of-conduct crime such as section 288.5
      (*Vasquez, supra,* 51 Cal.App.4th at p. 1285, 59 Cal.Rptr.2d 389),

11        the crime is complete when the course of conduct ends.  (*Wright v.*
      *Superior Court* (1997) 15 Cal.4th 521, 525, 63 Cal.Rptr.2d 322,

12        936 P.2d 101; *see also People v. Zamora* (1976) 18 Cal.3d 538,
      548, 134 Cal.Rptr. 784, 557 P.2d 75 (*Zamora*).)  The limitations

13        period ceases to run when prosecution begins, that is, "when any of
      the following occurs: [¶] (a) An indictment or information is filed.

14        [¶] ... [¶] (d) An arrest warrant or bench warrant is issued, provided
      the warrant names or describes the defendant with the same degree

15        of particularity required for an indictment, information, or
      complaint."[5]  (§ 804.)

16

17  _____

18      [4]  Respondent argues that this claim is unexhausted "unless Petitioner is trying to present
claims similar to those in his petition for writ of habeas corpus and/or petition for review filed in
the California Supreme Court."  Answer at 2.  In an apparent reply to this argument, petitioner

19  explains in his traverse that he has "combined direct appeal, and writ of habeas corpus claims
into federal writ petitions for review now before this U.S. District Court:  therefore, all claims

20  have been fairly presented to the highest state court:  California Supreme."  Traverse at 3.  The
undersigned concludes from this statement that petitioner intends to raise in his petition before

21  this court only those claims that were raised and exhausted in state court.  Accordingly the court
will address all of petitioner's claims on the merits, as informed by the claims described in

22  petitioner's filings in the California Supreme Court.  Claims made for the first time in the
traverse, if any, which were not contained in petitioner's filings in the California Supreme Court

23  will not be addressed.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (a
traverse is not the proper pleading to raise additional grounds for relief).

24      [5]  Section 813, subdivision (a) describes the process for issuance of an arrest warrant as

25  follows: "When a complaint is filed with a magistrate charging a felony originally triable in the
superior court . . ., if, and only if, the magistrate is satisfied from the complaint that the offense

26  complained of has been committed and that there is reasonable ground to believe that the

The limitations period is tolled for up to three years if the defendant is out of the state.  (§ 803, subd. (d).)  Moreover, "[n]o time during which prosecution of the same person for the same conduct is pending in a court of this state is a part of a limitation of time prescribed in this chapter."  (§ 803, subd. (b).)  Under some circumstances, the prosecution may revive allegations of child sexual abuse after expiration of the limitations period.  (§ 803, subd. (g)(2)(A).)  We construe statutes of limitation strictly in favor of the accused.  (*Zamora, supra*, 18 Cal.3d at p. 574, 134 Cal.Rptr. 784, 557 P.2d 75; *People v. Le* (2000) 82 Cal.App.4th 1352, 1357-1358, 98 Cal.Rptr.2d 874.)

Defendant contends the trial court erred in ruling as a matter of law, and instructing the jury, that case No. 97-9186 commenced upon issuance of the arrest warrant on December 19, 1997.  He argues the December 1997 arrest warrant failed to cite any violation of section 288.5, and therefore did not commence prosecution of count 1.  Defendant also notes the accompanying police report showed only that defendant molested S.W. on two consecutive nights, and cannot support a charge of continuing sexual abuse for that reason.  He stated that "[a] directed finding would have been appropriate, but it should have fixed the commencement of the prosecution at November 16, 2000, when the information was filed."

There is no merit in these contentions.  We conclude that the violations of sections 288, subdivision (a), and 288a, subdivision (b)(2) set forth in the December 1997 complaint and arrest warrant involved the "same conduct" later alleged in count one of the information.  Under section 803, subdivision (b), the limitations period on continuing sexual abuse did not continue to run between December 19, 1997, and November 16, 2000, while "prosecution of the same person for the same conduct" was pending.  Accordingly, the trial court was correct in ruling prosecution of count 1 commenced in December 1997.

Although we find no cases directly on point, this court considered a similar statute of limitations issue in the context of a trial court's refusal to instruct on a lesser related offense it found to be time-barred.  In *People v. Whitfield* (1993) 19 Cal.App.4th 1652, 24 Cal.Rptr.2d 210 (*Whitfield*), the jury convicted defendant of a variety of sexual offenses, including forcible rape.  (*Id.* at pp. 1654-1655, 24 Cal.Rptr.2d 210.)  On appeal, defendant argued the court erred in refusing to give requested instructions on section 647, subdivision (b), engaging in prostitution.  (*Whitfield, supra*, at p. 1656, 24 Cal.Rptr.2d 210.)  Citing sections 803, subdivision (b), and 804, subdivision (a), we narrowed the issue to "whether the

defendant has committed it, the magistrate shall issue a warrant for the arrest of the defendant, . . ."

8

related offense of prostitution [was] based on the 'same conduct'"
as the rapes charged in the information.  (*Whitfield, supra*, at p.
1659, 24 Cal.Rptr.2d 210.)

We continued: "The Law Revision Commission comment to
section 803 states that '[t]he test of the "same conduct," involving
as it does some flexibility of definition, states a principle that
should meet the reasonable needs of prosecution, while affording
the defendant fair protection against an enlargement of the charges
after running of the statute....'  [¶]  Thus, where an action is
dismissed and refiled after the period of limitations, the prosecutor
may charge offenses based on the 'same conduct' as the dismissed
action because the filing of the original action tolls the statute of
limitations not only as to those offenses charged in the original
action, but also as to offenses based on the 'same conduct.'"
(*Whitfield, supra*, 19 Cal.App.4th at p. 1659, 24 Cal.Rptr.2d 210.)
We also explained that "[f]ormer section 802.5 (repealed
Stats.1984, ch. 1270, § 1, p. 4335), the antecedent to section 803,
subdivision (b), provided in part: '... no time during which a
criminal action is pending is a part of any limitation of the time for
recommencing that criminal action in the event of a prior dismissal
of that action, subject to the provisions of Section 1387.'
(Stats.1981, ch. 1017, § 3, p. 3927.)  In its comment to section 803,
subdivision (b), the Law Revision Commission explained:
'Subdivision (b) continues the substance of former Section 802.5.
The limitation of former Section 802.5 that permitted
recommencing the same "criminal action" is replaced by the
broader standard of prosecution of the "same conduct," drawn
from Model Penal Code § 1 .06(6)(b).  The former law that
provided tolling only for a subsequent prosecution for the same
offense was too narrow, since the dismissal may have been based
upon a substantial variation between the previous allegations and
the proof.'"  (*Whitfield, supra*, 19 Cal.App.4th at p. 1659, fn. 8, 24
Cal.Rptr.2d 210.)

The conduct at issue in *Whitfield* was sexual intercourse between
defendant and his two victims, both of whom claimed the conduct
was rape.  (*Whitfield, supra*, 19 Cal.App.4th at pp. 1659-1660, 24
Cal.Rptr.2d 210.)  We concluded that the filing of the information
tolled the one-year statute of limitations on prostitution, because
the prostitution offenses were based on the same conduct as the
rapes for which defendant was being prosecuted.  (*Id.* at p. 1660,
24 Cal.Rptr.2d 210.)  We therefore reversed three of the rape
convictions, deciding that the instructions requested by defendant
on the lesser related offense of prostitution should have been
given. (*Id.* at pp. 1660-1661, 24 Cal.Rptr.2d 210; *accord, People v.
Greenberger* (1997) 58 Cal.App.4th 298, 368-369, 68 Cal.Rptr.2d
61 [kidnapping was part of the same conduct that resulted in the
victim's murder, and prosecution commenced with the issuance of
the arrest warrant for murder]; *see also People v. Bell* (1996) 45
Cal.App.4th 1030, 1064-1065, 53 Cal.Rptr.2d 156 [the forgery and

9

1    false filing were merely aspects of the rent skimming scheme, and
     prosecution was deemed by operation of law to have commenced
2    with the issuance of the arrest warrant for the rent skimming
     offenses].)
3
     Applying the same reasoning to the case before us, we conclude
4    the trial court did not err in ruling and instructing the jury that
     prosecution of count 1 commenced with the issuance of the arrest
5    warrant on December 19, 1997.

6    Opinion at 10-15.  In sum, the state appellate court rejected petitioner's arguments that the

7    limitations period continued to run between the issuance of the arrest warrant for the crimes

8    involving victim S.W. on December 19, 1997, and the issuance of the amended consolidated

9    complaint on November 16, 2000.  The court reasoned that because the crimes involved the

10   "same conduct," the statute of limitations was tolled during that period.  Petitioner challenges

11   these conclusions by the California Court of Appeal.

12        Although petitioner cites several federal constitutional provisions in the caption of this

13   claim, his claim essentially involves the interpretation of state law.  A challenge to a state court's

14   interpretation of state law is not cognizable in a federal habeas corpus petition.  *See Waddington*

15   *v. Sarausad*, ___ U.S. ___, 129 S.Ct. 823, 832 n.5 (2009) ("we have repeatedly held that 'it is

16   not the province of a federal habeas court to reexamine state-court determinations on state-law

17   questions"); *Rivera v. Illinois*, ___ U.S. ___, 129 S.Ct. 1446, 1454 (2009) ("[A] mere error of

18   state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21

19   (1982) and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)); *Bradshaw v. Richey*, 546 U.S.

20   74, 76 (2005) "a state court's interpretation of state law . . . binds a federal court sitting in federal

21   habeas"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for

22   errors of state law).  A habeas petitioner may not "transform a state-law issue into a federal one"

23   merely by asserting a violation of the federal constitution.  *Langford v. Day*, 110 F.3d 1380,

24   1389 (9th Cir. 1997).  Rather, petitioner must show that the decision of the California Court of

25   Appeals somehow "violated the Constitution, laws, or treaties of the United States."  *Little v.*

26   *Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting *Estelle*, 502 U.S. at 68).

1    Petitioner has cited no federal cases in support of this claim, nor has he explained how

2    the state court decision or the timing of the state charging documents violate the federal

3    constitution or a federal statute.  Accordingly, he has failed to establish that the state court's

4    rejection of his statute of limitations claim was contrary to, or an unreasonable application of

5    clearly established federal law.  *See Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no

6    Supreme Court precedent creates clearly established federal law relating to the legal issue the

7    habeas petitioner raised in state court, the state court's decision cannot be contrary to or an

8    unreasonable application of clearly established federal law").  For these reasons, petitioner is not

9    entitled to relief on his claim that some of the charges against him were barred by the state

10   statute of limitations.

11                     **2.   Failure to Submit Alternative Verdicts to the Jury**

12   Petitioner's next claim is that the trial court violated his rights pursuant to the Sixth and

13   Fourteenth Amendments to the United States Constitution when it failed to submit alternative

14   verdict forms to the jury pursuant to Cal. Penal Code § 288.5(c) with respect to the charges

15   involving victim S.W.  Pet. at 5.  In his petition for review filed in the California Supreme Court,

16   petitioner described this claim as follows:

17             In the instant case, the prosecutor alleged that the violations of
               Section 288(a) charged in counts 2 through 11 occurred on within
18             [sic] the exact . . . expanse of time as the violation of Section 288.5
               charged in count 1.  Under the terms of Section 288.5(c), appellant
19             could not be convicted of both:

20             "No other felony sex offense involving the same victim may be
               charged in the same proceeding with a charge under this section
21             unless the other charged offense occurred outside the time period
               charged under this section or the other offense is charged in the
22             alternative."

23             Pursuant to this subdivision, the Court of Appeal accepted
               appellant's claim of error, but not his claim of remedy.  Appellant
24             contended that because the prosecutor did not submit the case in
               the alternative to the jury, the remedy was either remand for retrial
25             on all these counts, or an order to the Superior Court to vacate the
               convictions leading to a greater punishment and impose the lesser.
26             This latter would remove any prejudice from the error.  Instead, the

                                              11

1     Court of Ap peal, *ex cathedra*, vacated the conviction on count 1
      and affirmed the greater sentence that remained for count 2
2     through 11. (citation omitted.)

3     This issue has not been resolved.  In *People v. Johnson* (2002) 28
      Cal.4th 240, this Court affirmed the plain meaning of Section
4     288.5(c) against a claim that one set of convictions may remain so
      long as the punishment was stayed.  The statute requires an
5     acquittal, and, again, this Court affirmed the plain meaning of the
      statute.  (*Id.* at p. 243.)  The question of remedy, however, was
6     circumvented, because this Court vacated the convictions that
      would lead to the greater sentence and sanctioned the imposition of
7     the lesser sentence.

8     The key to appellant's contention is that Section 288.5(c) creates
      both a statutory and Sixth Amendment right to a trial by jury (see
9     *Turner v. Louisiana* (1965) 379 U.S. 466, 471-472), i.e., the right
      to have a jury determine which group of counts should be found
10    for conviction and which for acquittal.  A trial court or reviewing
      court that chooses the counts that render a higher penalty usurp the
11    jury's function, unless it removes any prejudice from the statutory
      and constitutional error by vacating the convictions for the counts
12    that render the higher penalty.

13    Pet., Ex. A-A, at 8-9.  The California Court of Appeal rejected these claims, reasoning as

14    follows:

15              **C. Charging in the Alternative Under Section 288.5:**

16    Section 288.5 "imposes certain limits on the prosecution's power
      to charge both continuous sexual abuse and specific sexual
17    offenses in the same proceeding.  A defendant may be charged
      with only one count of continuous sexual abuse unless multiple
18    victims are involved, in which case a separate count may be
      charged for each victim."  (*People v. Johnson* (2002) 28 Cal.4th
19    240, 243, 121 Cal.Rptr.2d 197, 47 P.3d 1064 (*Johnson*); § 288.5,
      subd. (c).) Section 288.5, subdivision (c) contains the additional
20    limitation that "[n]o other felony sex offense involving the same
      victim may be charged in the same proceeding with a charge under
21    this section unless the other charged offense occurred outside the
      time period charged under this section or the other offense is
22    charged in the alternative ...."  (§ 288.5, subd. (c).)  In *Johnson*, a
      case argued and decided while defendant's case was pending in
23    this court, the California Supreme Court held that given the clear
      language of section 288.5, the prosecution may not obtain multiple
24    conviction for continuous sexual abuse and specific sexual
      offenses involving the same victim over the same period of time.
25    (*Johnson, supra*, at p. 248; emphasis added.)

26    ////

                                    12

In this case, there is no dispute the district attorney failed to charge the offenses in count 1 and counts 2 through 11 in the alternative. Following defendant's conviction on each of these counts, the court stayed the 16-year sentence in count 1 pursuant to section 288.5, and imposed consecutive, two-year sentences, or one-third the middle term, for the 10 violations of section 288, subdivision (a) in counts 2 through 11.

Emphasizing the plain meaning of the statute, defendant insists he is entitled to reversal of counts 1 through 11 because the court failed to submit them to the jury in the alternative. At oral argument, defendant's counsel argued we should order retrial on all these counts so the jury can decide whether to convict defendant on the single count of continuous sexual abuse under section 288.5, or on the 10 individual counts. Alternatively, he noted there would be no prejudice if we reversed defendant's conviction on specific counts 2 through 11 and the 20-year sentence, and affirmed his conviction in count 1 with the lower sentence of 16 years. The law does not compel either remedy.

The harm caused by the pleading error can be cured by invalidation of either the continuous sexual abuse conviction or the convictions on the specific counts of sexual abuse. (*Johnson, supra*, 28 Cal.4th at pp. 245-248, 121 Cal.Rptr.2d 197, 47 P.3d 1064 [affirming Court of Appeal's reversal of specific sexual abuse counts]; *see People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1177, 122 Cal.Rptr.2d 859, review den. Oct. 23, 2002 [affirming the trial court's dismissal of the section 288.5 count].) The *Alvarez* court considered the legislative purpose of section 288.5, and observed that "[i]t would be anomalous if section 288.5, adopted to prevent child molesters from evading conviction, could be used by those molesters to circumvent multiple convictions with more severe penalties and prior strike consequences than available for a conviction under section 288.5." (*Alvarez, supra*, at pp. 1177-1178, 122 Cal.Rptr.2d 859.) Based on the foregoing, we reverse defendant's conviction of continuous sexual abuse in count 1. In so doing, we affirm the trial court's election to sentence defendant to the higher aggregate term for the specific sexual offenses.

Defense counsel also suggested at oral argument that defendant was entitled to the lower, 16-year sentence as a result of the district attorney's pleading error. According to counsel, "[t]he defendant did not come out the best he could have done." We begin by noting defendant did not demur and therefore waived any defect in the pleading. (*Alvarez, supra*, 100 Cal.App.4th at p. 1176, 122 Cal.Rptr.2d 859.) Moreover, the jury found defendant guilty on each count the prosecution should have pleaded in the alternative. In these circumstances, we perceive no miscarriage of justice in affirming the trial court's determination defendant should serve the most severe sentence prescribed by law. (Cal. Const., art. VI, §

13

1    13; *People v. Watson* (1956) 46 Cal.2d 818, 836-838, 299 P.2d
     243.)

2

3    Opinion at 15-17.[6]

4         As in the claim above, this claim challenges the state court's interpretation of state law.

5    As such, it is not cognizable in this federal habeas proceeding. *Waddington*, 129 S.Ct. at 832

6    n.5; *Rivera*, 129 S.Ct. at 1454; *Bradshaw*, 546 U.S. at 76; *Lewis*, 497 U.S. at 780.[7]

7         To the extent petitioner is arguing that the state court's remedy for a violation of Cal.

8    Penal Code § 288.5 constituted a violation of *Turner v. Louisiana* (1965) 379 U.S. 466, 471-

9    472), his claim must fail. *Turner* held that a state criminal defendant had been denied the right to

10   a fair trial by an impartial jury when the two deputy sheriffs who gave key testimony leading to

11   defendant's conviction had fraternized with the jurors outside of the courtroom during the

12   performance of their duties. The court reasoned that jurors have a duty to consider only the

13   evidence which is presented to them in open court. *Id.* at 472-73. The court explained that "[i]n

14   the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that

15   the 'evidence developed' against a defendant shall come from the witness stand in a public

16   courtroom where there is full judicial protection of the defendant's right of confrontation, of

17   cross-examination, and of counsel." *Id.* *Turner* does not address the issue presented here, which

18   is whether a state appellate court can remedy a violation of Cal. Penal Code § 288.5 by striking

19   ───────────────

20        [6] As set forth above, the California Court of Appeal found that petitioner had waived a
     challenge to "any defect in the pleading" because of his failure to "demur." *Id.* at 17.

21   Respondent argues that the state court's finding of waiver constitutes a state procedural bar
     precluding this court from addressing the merits of this claim. Answer at 22. However, for the

22   reasons discussed below, even if this claim was not procedurally barred, it lacks merit and must
     be denied.

23

24        [7] Respondent explains that the California Court of Appeal "reversed counts 1 and 32,
     leaving Petitioner's claim viable only as to count 30." Answer at 20. He argues that, even as to

25   count 30, the allegations "are alleged over different time periods and Petitioner's claim is
     therefore without merit." *Id.* Even assuming arguendo that an error by the district attorney or
     the trial court with respect to count 30 violated Cal. Penal Code § 288.5, any challenge to this

26   state law error is not cognizable in a federal habeas petition.

counts that carry lesser penalties than the counts that are allowed to stand, as opposed to remanding the matter for a jury trial.  Because petitioner has not cited a United States Supreme Court decision on this point, he has failed to establish that the state court's rejection of his statute of limitations claim was contrary to, or an unreasonable application of clearly established federal law.  *See Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) (when a Supreme Court decision does not "squarely address[ ] the issue in th[e] case" or establish a legal principle that "clearly extend[s]" to a new context, "it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision"); *Brewer*, 378 F.3d at 955 ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law").  The court also notes that the jury convicted petitioner of both the individual counts and the count of continuous assault on a minor.  Accordingly, petitioner was not deprived of a jury trial on any of these counts.

For all of these reasons,  petitioner is not entitled to relief on this claim.[8]

### 3.  Admission of Evidence of Prior Uncharged Offenses

Petitioner claims that the trial court violated his right to due process and the Ex Post Facto clause when it admitted evidence of prior uncharged sexual offenses pursuant to Cal. Evidence Code § 1108 to show petitioner's propensity to commit sex offenses.  Pet. at 6;

---

[8]  In his discussion of this claim, petitioner refers to "the United States Supreme Court opinion of June 25, 2004: as to, sentencing function of the trial jury."  Pet. at 9.  Petitioner also mentions "*Blakely* 2004" in connection with another one of his claims before this court and in his traverse.  Pet. at 11; Traverse at 11-12.  In *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), the United States Supreme Court decided that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases the statutory maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction. However, because petitioner's conviction was final as of the date the *Blakely* decision was issued, any argument based on this decision is foreclosed.  *See Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005) (*Blakely* does not apply retroactively to cases on collateral review in a 28 U.S.C. § 2254 habeas action).

15

1   Traverse at 13-22.  Citing *Stogner v. California*, 539 U.S. 607 (2003), petitioner argues that the

2   evidence was unduly prejudicial and too stale to be relevant and that it relieved the prosecution

3   of its burden to prove the charges beyond a reasonable doubt.  Pet. at 11.  Petitioner also

4   contends that if the trial court had not admitted this evidence, he would have received a lesser

5   sentence.  *Id.*

6                     **a.  <u>State Court Decision</u>**

7   The California Court of Appeal rejected these arguments, reasoning as follows:

8           **D. Evidence Code Section 1108:**

9           In pretrial motions, the prosecution sought admission of evidence
            of uncharged acts of child sexual abuse under Evidence Code
            section 1101, subdivision (b) to show intent and common plan or
10          scheme, and under Evidence Code section 1108 to show
            defendant's propensity to sexually molest children.[9]  Defense
11          counsel objected on various grounds, but did not assert Evidence
            Code section 1108 was inapplicable on constitutional grounds.  A
12          lengthy discussion ensued, during which the court engaged in a
            detailed analysis of the proffered evidence under Evidence Code
13          section 352.  The court overruled defense counsel's objections, and
            admitted evidence in the form of testimony by two additional
14          victims.  It instructed the jury that the evidence was admitted for
            the limited purpose of showing defendant "had a disposition to
15          commit the same or similar-type sexual offenses," a "characteristic

16   _____

17          [9]  Evidence Code section 1101 reads, in part:

18              "(a) Except as provided in this section and in Sections 1102, 1103,
                1108, and 1109, evidence of a person's character or a trait of his or
19              her character (whether in the form of an opinion, evidence of
                reputation, or evidence of specific instances of his or her conduct)
20              is inadmissible when offered to prove his or her conduct on a
                specified occasion.

21
                "(b) Nothing in this section prohibits the admission of evidence
22              that a person committed a crime ... when relevant to prove some
                fact (such as ... intent, preparation, plan, ... ) other than his or her
23              disposition to commit such an act."

24              Evidence Code section 1108, subdivision (a) reads: "In a criminal
                action in which the defendant is accused of a sexual offense,
25              evidence of the defendant's commission of another sexual offense
                or offenses is not made inadmissible by Section 1101, if the
26              evidence is not inadmissible pursuant to Section 352."

                                    16

method, plan or scheme in the commission of criminal acts," and "the existence of the intent which is a necessary element of the crime charged, ..."  Thereafter, R.R. and L.B. testified about acts of child sexual abuse defendant committed on them in the late 1960's and early 1970's.

Evidence Code section 1108 became effective on January 1, 1996 (*People v. Fitch* (1997) 55 Cal.App.4th 172, 185, 63 Cal.Rptr.2d 753 (*Fitch*)), before trial, but after defendant was alleged to have committed the acts charged in the information.  Defendant argues we must reverse his convictions on all but four of the 32 counts, including count 1, because introduction of the evidence of uncharged acts under Evidence Code section 1108 constituted a violation of the prohibition against ex post facto laws.  He urges us to reexamine our holding to the contrary in *Fitch, supra*, at pages 185-186, 63 Cal.Rptr.2d 753, based on the United States Supreme Court's clarification of ex post facto jurisprudence in *Carmell v. Texas* (2000) 529 U.S. 513, 538-539 [146 L.Ed.2d 577, 597-598] (*Carmell* ).

Defense counsel failed to object at trial to the admission of the uncharged acts on the ground asserted here.  Accordingly, we conclude he waived the issue for purposes of appeal.  (Evid.Code, § 353; *see People v. Pinholster* (1992) 1 Cal.4th 865, 934-935, 4 Cal.Rptr.2d 765, 824 P.2d 571 [defense waived any challenge to admission of taped witness interview by failing to object at trial on grounds it violated his state and federal constitutional rights].)

In any event, defendant acknowledges we held in *Fitch, supra*, 55 Cal.App.4th at page 186, 63 Cal.Rptr.2d 753, that Evidence Code section 1108 does not violate the ex post facto clause.  He nonetheless insists *Fitch* is wrong in light of *Carmell* supra, 529 U.S. 513 [146 L.Ed.2d 577], the United States Supreme Court's most recent pronouncement on the ex post facto clause.  We decline to revisit our holding in *Fitch*.

In *Fitch*, we relied on the following 1925 description of the ex post facto prohibition quoted in *Collins v. Youngblood* (1990) 497 U.S. 37, 42 [111 L.Ed.2d 30, 39] ( Collins ):  "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto."  (*Fitch, supra*, 55 Cal.4th at p. 185, 63 Cal.Rptr.2d 753.)  We acknowledged that the 1925 case quoted in *Collins* omitted a fourth element included in a 1798 formulation of ex post facto law, specifically: "Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of

the offense, in order to convict the offender." (*Fitch, supra*, at p. 185, 63 Cal.Rptr.2d 753, emphasis in original.) We quoted language in *Collins* that "'[a]s cases subsequent to [the 1798 case] make clear, this language was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes. [Citations.]' [Citation.]" (*Fitch, supra*, at pp. 185-186, 63 Cal.Rptr.2d 753.)

In *Carmell*, the United States Supreme Court adopted the 1798 list of four categories of laws that contravene ex post facto principles, and concluded that an amendment to Texas law that removed a corroboration requirement to convict defendant of a sexual offense "unquestionably" altered the legal rules of evidence in a manner prohibited by the Constitution. (*Carmell, supra*, 529 U.S. at pp. 522, 530, 120 S.Ct. at pp. ___, ___ [146 L.Ed.2d at pp. 588, 593].) The majority noted that *Collins* had been "rather cryptic" about whether the fourth category was really prohibited by ex post facto principles. It rejected any suggestion that the fourth category had been "cast out" of the ex post facto clause. (*Carmell, supra*, at pp. 537-538 [529 U.S. at pp. ___, 120 S.Ct. at pp. ___, 146 L.Ed.2d at pp. 597-598].) At the same time, the majority in *Carmell* recognized that "mere changes in normal rules of evidence that do not change (1) ingredients of an offense, (2) ultimate facts required for a finding of guilt, or (3) the quantum of evidence necessary for a finding of guilt, do not contravene ex post facto principles. ([*Id.* at] pp. 540-545....)" (*In re Melvin J.* (2000) 81 Cal.App.4th 742, 759, fn. 8, 96 Cal.Rptr.2d 917.)

The testimony about defendant's uncharged acts admitted under Evidence Code section 1108 does not fall into those prohibited categories. The statute did not change the elements of the crimes for which defendant was convicted. We explained in *Fitch* that "[w]hile the admission of evidence of the uncharged sex offense may have added to the evidence the jury could consider as to defendant's guilt, it did not lessen the prosecution's burden to prove his guilt beyond a reasonable doubt." (*Fitch, supra*, 55 Cal.App.4th at pp. 182-183, 63 Cal.Rptr.2d 753.)

Opinion at 17-21.

Respondent argues that the state court's finding of waiver constitutes a state procedural bar precluding this court from addressing the merits of this claim. Answer at 23-26. However, for the reasons discussed below, even if this claim were not procedurally barred, it lacks merit and must be denied.

////

////

18

### b. Due Process

The question whether evidence of prior uncharged acts was properly admitted under California law is not cognizable in this federal habeas corpus proceeding. *Estelle*, 502 U.S. at 67. The only question before this court is whether the trial court committed an error that rendered the trial so arbitrary and fundamentally unfair that it violated federal due process. *Id. See also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point").

The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds* by *Woodford v. Garceau*, 538 U.S. 202 (2003). In fact, the Supreme Court has expressly left open this question. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). *See also Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in determining that the propensity evidence introduced against the defendant did not violate his right to due process); *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006), *cert. denied*, 549 U.S. 1287 (2007) (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child molestation cases, under which the test for balancing probative value and prejudicial effect remains applicable, does not violate the due process clause). Accordingly, the

19

1  state court's rejection of petitioner's due process claim is not contrary to United States Supreme

2  Court precedent.

3        Further, any error in admitting this testimony did not have "a substantial and injurious

4  effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637

5  (1993). *See also Penry v. Johnson*, 532 U.S. 782, 793-96 (2001). The record reflects that the

6  state trial judge struck an appropriate balance between petitioner's rights and the clear intent of

7  the California legislature that evidence of prior similar acts be admitted in sexual offense

8  prosecutions. The trial court held a hearing on petitioner's pre-trial motion to exclude evidence

9  of petitioner's uncharged acts of sexual abuse of two children and concluded that the challenged

10  evidence was relevant, appropriate, and allowed by California law. Opinion at 17-18. Further,

11  the jury instructions did not compel the jury to draw an inference of propensity – they simply

12  allowed it. The trial court instructed the jury at the close of the evidence that if they found

13  petitioner had committed the prior sexual offenses they could, but were not required to, infer that

14  he had a disposition to commit sexual offenses. Clerk's Transcript on Appeal (CT) at 223. The

15  jury was also instructed that if they found that petitioner had such a disposition, they could, but

16  were not required, to infer that he was likely to have committed the charged offenses. *Id.* The

17  jury was directed that it if they found by a preponderance of the evidence that petitioner

18  committed prior sexual offenses, that was not sufficient by itself to prove beyond a reasonable

19  doubt that he committed the crimes charged in the information. *Id.* at 224. In addition, the jury

20  instructions as a whole correctly informed petitioner's jury that the prosecution had the burden of

21  proving all elements of the crimes against petitioner beyond a reasonable doubt. *Id.* at 233. The

22  jury is presumed to have followed all of these instructions. *Weeks v. Angelone*, 528 U.S. 225,

23  234 (2000); *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007).

24        The admission of petitioner's prior acts of sexual misconduct did not violate any right

25  clearly established by United States Supreme Court precedent or result in prejudice under the

26  circumstances of this case. Accordingly, petitioner is not entitled to relief on his due process

claim.

### c. **Ex Post Facto**

Petitioner also argues that the admission of prior crimes evidence pursuant to Cal. Evidence Code § 1108 violated the Ex Post Facto Clause, in light of the decision of the United States Supreme Court in *Carmell v. Texas*. The Ninth Circuit Court of Appeals rejected this identical argument in *Schroeder v. Tilton*, 493 F.3d 1083, 1088 (9th Cir. 2007):

> Because § 1108 did not affect the quantum of evidence sufficient to convict Schroeder, the state did not violate his right to be free from retroactive punishment when it allowed § 1108 evidence to be presented at his trial. The decision of the California courts was neither contrary to nor an unreasonable application of clearly established Supreme Court law under *Carmell*.

*Id.* at 1088.[10]  Accordingly, petitioner is not entitled to relief on his ex post facto claim.

### 4. **Insufficient Evidence**

Petitioner next claims that the evidence was insufficient to support his conviction on the claims involving S.W. (counts 1-23) and D.H. (counts 30-31.)  Pet. at 6, 12-13, Ex. A-A at 12-20.  He argues that S.W. merely "estimated" the number of times he was with petitioner, and contends that this is "erroneous" and "generic, without truthfulness."  *Id.*  With respect to D.H., petitioner argues that "the only time petitioner could have been associated with [D.H.] would have been in the same time frame of both counts."  Pet. at 13.  *See also* Pet., Ex. A-A at 20-22.[11]

### a. **State Court Opinion**

The California Court of Appeal rejected petitioner's claims of insufficient evidence.

////

---

[10] In *Stogner*, the case cited by petitioner in support of this claim, the Supreme Court held that application of a California law permitting prosecution for sex-related child abuse within one year of victim's report to police, to offenses whose prosecution was time-barred at time of law's enactment, was unconstitutionally ex post facto. That case is not on point and does not dictate the result here.

[11] The appellate court reversed counts 1, 12, and 13, involving victim S.W., on other grounds.

With respect to victim C.W., the court considered petitioner's claim as it applied to count 1 and then applied the same reasoning to the remaining counts involving C.W.  The court explained its reasoning with respect to count 1 as follows:

> The information charged defendant in count 1 with continuous sexual abuse of S.W. in violation of section 288.5, subdivision (a).[12]  It alleged that three or more acts of "substantial sexual conduct" occurred" on and between the 1st day of August, 1991, and 29th day of November, 1993, a period of time that was not less than three months in duration, ..."
>
> For purposes of applying section 288.5, "substantial sexual conduct" is defined as "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."  (§§ 288.5, subd. (a), 1203.066, subd. (b).)  Defendant challenges his conviction in count 1 on four separate grounds: sufficiency of the evidence, statute of limitations, failure to charge violations of section 288.5 and section 288, subdivision (a) in the alternative, and violation of the prohibition against ex post facto laws. The same arguments provide the basis for defendant's claims of error in other counts. For this reason, we address his arguments in detail here, and apply our analysis to the remaining counts as relevant.
>
> **A. Sufficiency of the Evidence:**
>
> An accused violates section 288.5 if he or she "(1) resided with, or had recurring access to, a child under fourteen, and (2) committed three or more acts of sexual molestation of the child, and (3) three

---

[12]  Section 288.5 reads, in part:

> "(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.
>
> "(b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number."

22

or more months passed between the first and the last act of molestation, regardless of whether the defendant resided with or had access to the child *continuously* throughout the three-or-more-month period." (*People v. Vasquez* (1996) 51 Cal.App.4th 1277, 1287, 59 Cal.Rptr.2d 389 (*Vasquez*), emphasis in original.)  Defendant contends the prosecution failed to establish that the "acts of substantial sexual conduct" occurred over a period of more than three months while S.W. was under 14 years of age.

When faced with a challenge to the sufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738; *accord, People v. Hatch* (2000) 22 Cal.4th 260, 272, 92 Cal.Rptr.2d 80, 991 P.2d 165.)  "In reviewing sufficiency of the evidence, we ... presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Lewis* (1990) 50 Cal.3d 262, 277, 266 Cal.Rptr. 834, 786 P.2d 892.)  Substantial evidence includes circumstantial evidence and reasonable inferences flowing from that evidence. (*In re James D.* (1981) 116 Cal.App.3d 810, 813, 172 Cal.Rptr. 321; *see In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 999, 279 Cal.Rptr. 236.)

The record reveals that a friend introduced S.W. to defendant when S.W. was "about" 13 years old and in the sixth grade.  S.W. and other kids did odd jobs for defendant.  When defendant took S.W. on fishing and camping trips in his motor home, they watched "porno flicks" on the television.  The first touching occurred on the third trip, when defendant masturbated S.W.  On the fifth trip, defendant masturbated S.W., and orally copulated him.  Later, when S .W. was in the ninth grade, he orally copulated defendant while sleeping at his house.

S.W. testified that he went on seven or eight trips with defendant, at least once a month.  Counting contacts with defendant at his house, S.W. estimated he was with defendant three or four times a month.  According to S.W., "something sexual" happened two or three times a month.  The prosecutor attempted to clarify S.W.'s testimony:

"Q.... Up until that point what had been occurring?  We talked about the fact he had masturbated you and he had given you a blow job.  Had you ever masturbated him?

"A. Yes. Yes.

"Q. When did that start?

1    "A. The same time.

2    "Q. As everything else had started?

3    "THE COURT: Is that a 'yes'?

4    "THE WITNESS: Yes.

5    "[THE PROSECUTOR]: Q.  Okay.  So from the time you were 12
     until the time you were about 15, it had been mutual masturbation
6    and him orally copulating you, giving you blow jobs?

7    "A. That was further down, the blow job part.

8    "Q. Him giving you blow jobs?

9    "A. Yes. Yes.

10   "Q. First it started with the masturbation?

11   "A. Yes.

12   "Q. And then a little bit later it was him giving you blow jobs?

13   "A. Yes.

14   "Q. And then when you hit ninth grade is when the first time you
     gave him a blow job?

15
     "A. Yes.
16

17   "Q. Okay. And you saw him about three or four times a month and
     something happened probably two times a month?
18
     "A. Yeah.
19
     "Q. Okay.  Something sexual happened two times a month?
20
     "A. Yes."
21
     The prosecutor continued:
22
     "Q.... I need to clarify a couple of things as far as amounts and
23   times go.  Do you remember when you were in seventh grade?
     Were you hanging out with him in seventh grade?
24
     "A. Yes.  I lived in a house.
25
     "Q. During the seventh grade, was that first year-was he putting
26   his hand-was he masturbating you in the seventh grade during that

1   time period?  That's when you first met him?

2   "A. Yeah.

3   "Q. Okay.  And that's him putting his hand on your penis?

4   "A. Yes.

5   "Q. Were you doing the same to him in seventh grade?

6   "A. No.

7   "Q. Not yet?  Okay.  Did that start in eighth grade?

8   "A. It was further to the end, yes.  More frequent as I got older.

9   "Q. So that was happening in eighth grade?

10  "THE COURT: Is that a 'yes'?

11  "THE WITNESS: Yes."

12  For purposes of his argument that the prosecution failed to prove
    he violated section 288.5, defendant excludes the specific acts
13  S.W. said occurred when he was in the eighth and ninth grade, and
    arguably over 14.  He acknowledges three substantial sexual acts
14  occurred on the third and fifth fishing trips, but argues the two
    trips could not have been three months apart in light of S.W.'s
15  testimony they occurred at least once a month.  Defendant
    maintains that S.W.'s testimony that "something sexual" happened
16  twice a month is "overly broad and can embrace such matters as
    the display of pornography or the making of lewd remarks."  Thus,
17  he says the acts S.W. described in a generic manner do not qualify
    as the additional acts needed beyond the three-month period set
18  forth in the statute.

19  We conclude there is no merit in defendant's argument.  Even if
    we were to assume the three acts described in the third and fifth
20  trips did not occur over a period of more than three months, there
    is sufficient evidence to support a finding substantial sexual
21  conduct occurred over a period of more than three months, at
    defendant's house as well as in his motor home.

22
    Based on this record, the jury could reasonably infer S.W.'s
23  testimony that "something sexual" happened two or three times a
    month referred to masturbation and oral copulation.  The
24  prosecutor used the term "something sexual" during 15 pages of
    reporters transcript in which S.W. recounts only acts of oral
25  copulation and mutual masturbation.  The prosecutor summarized
    what S.W. described, saying: "We talked about the fact he had
26  masturbated you and he had given you a blow job."  Contrary to

                                    25

> defendant's suggestion S.W.'s generic testimony could include pornography or lewd remarks, the record shows S.W. did not consider watching "pornos" within the meaning of the prosecutor's term "something sexual."

Opinion at 4-10

In counts 2 through 11, involving C.W., petitioner was charged with violating Cal. Penal Code § 288(a), which provides that "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."  The California Court of Appeal rejected petitioner's claim of insufficient evidence as to those counts.  It explained it's reasoning as follows:

### Counts 2 Through 11 (S.W.)

> Defendant's challenge to his convictions of violating section 288, subdivision (a) in counts 2 through 11 reprise the arguments made in support of reversing count 1. (footnote omitted.)  Each count alleges defendant committed a lewd and lascivious act on S.W. "between the 1st day of August, 1991, and the 29th day of November, 1993."

> On the claim of insufficient evidence, defendant again argues "the generic phrase, 'something sexual' cannot, as a matter of law, establish on this record or otherwise, a lewd or lascivious touching."  Thus, he contends reversal is required on seven of the 10 counts alleging defendant committed lewd and lascivious acts on S.W. while he was under the age of 14.  We reject defendant's contentions based on our conclusion the jury could reasonably infer S.W.'s testimony that "something sexual" happened two or three times a month referred to masturbation and oral copulation.[13] Given this inference, the jury could also reasonably infer that defendant committed at least 10 lewd or lascivious acts before S.W. turned 14 on November 30, 1993, as alleged in counts 2 through 11.

////

---

[13]  See discussion, *infra*, at page 9.

> S.W. testified he met defendant when S.W. was "[a]bout 13" and
> in the sixth grade.  He stated he lived in a house on Sunset at the
> time, but later moved to a new house.  S.W.'s mother confirmed
> that she first met defendant after her family moved into the house
> on Sunset in August of 1992, when S.W. was 12 years old.  S.W.
> acknowledged the mutual masturbation started when he was 12,
> that is, before November 30, 1992.  He testified "something
> sexual" happened at least twice a month in the motor home or
> elsewhere from the time he first started going on trips with
> defendant.  Even if the jury were to conclude S.W. was molested
> only three times in the first five camping trips, and the camping
> trips began in the summer of 1992, the record supports the
> inference defendant masturbated or orally copulated S.W. a
> minimum of 20 times before November 30, 1993.

Opinion at 22-23.

In counts 14-18, involving C.W., petitioner was charged with violating Cal. Penal Code

§ 288(c)(1), and in counts 19-23, petitioner was charged with violating Cal. Penal Code

§ 288a(b)(2).  The California Court of Appeal rejected petitioner's claims of insufficient

evidence with respect to those counts on the same grounds, reasoning as follows:

> **Counts 14 Through 18 (S.W.)**
>
> Counts 14 through 18 involved allegations defendant committed
> lewd acts on S.W. when he was 14 or 15 years old.  (§ 288, subd.
> (c)(1).)[14]  Defendant maintains that three of the five counts must be
> reversed because they were based on S.W.'s "generic assertion that
> 'something sexual' occurred two times a month."  We rejected this
> argument as to the lewd and lascivious acts defendant committed
> when S.W. was under 14.[15]  The same analysis applies here.

* * *

////

---

[14]  Section 288, subdivision (c)(1) reads: "Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year.  In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child."

[15]  See discussion, *infra*, at pages 22-23.

27

**Counts 19 Through 23 (S.W.)**

> Counts 19 through 23 involved allegations defendant orally copulated S.W. when he was under 16.[16] (§ 288a, subd. (b)(2).) Defendant maintains there is insufficient evidence to sustain his conviction of three of the five counts because they were based on S.W.'s "generic assertion that 'something sexual' occurred twice a month." We already concluded there is no merit in that argument.[17]

Opinion at 25-27.

Petitioner was charged in count 30 with continuous abuse of victim D.H., and in count 31 with oral copulation of D.H. Petitioner challenges his conviction on count 31 on the basis that there was insufficient evidence that the crimes alleged in each count occurred in different time periods. The California Court of Appeal rejected this claim, reasoning as follows:

> Count 30 alleged defendant continuously abused D.H. sexually between November 22, 1993, and September 30, 1996, in violation of section 288.5, subdivision (a). Count 31 alleged defendant orally copulated D.H. between October 1, 1996, and October 31, 1996, in violation of section 288a, subdivision (c). Defendant maintains he is entitled to reversal of his conviction in count 31 because there is insufficient evidence the two crimes occurred in different time periods. He contends D.H. gave no testimony as to the frequency of the acts, and argues the record provides "no way to determine whether an act of molestation occurred in September, when the information alleged the end of the course of conduct for the 288.5, or whether an act of molestation occurred in October, the time period alleged for the 288 in count 31." The record does not support defendant's argument.
>
> D.H. met defendant when D.H. was eight or nine years old. He and other young boys did odd jobs for defendant. After about five months, D.H. started going on trips with defendant and the other boys. Defendant fondled D.H. during the first trip. He orally copulated D.H. on the fourth trip, and committed the same act on each subsequent trip. Defendant began to sodomize D.H. The abuse also occurred at defendant's house. D.H. took trips with defendant almost every week, and went to his house once or twice a week. The sexual abuse continued for two years, and stopped

---

[16] Section 288a, subdivision (b)(2) states: "Except as provided in Section 288, any person over the age of 21 years who participates in an act of oral copulation with another person who is under 16 years of age is guilty of a felony."

[17] See discussion, *infra*, at pages 22 and 23.

28

1

2

3

4

5

6

7

> two months before defendant left the area in January 1997.  D.H. said defendant fondled him about 100 times, orally copulated him over 50 times, made D.H. orally copulate defendant over 50 times, and sodomized him about 50 times during the two-year period.
>
> We conclude a reasonable jury could find on this record that defendant orally copulated D.H. in October 1996 as alleged in count 31.  Contrary to defendant's characterization of the record, D.H. testified about the frequency of the abuse.  He also indicated his father stopped him from visiting defendant two months before he fled to Mexico.  This evidence pinpointed October 1996 as the last period the abuse occurred.

8    Opinion at 28-29.

9    ## b. **Applicable Law**

10       There is sufficient evidence to support a conviction if, "after viewing the evidence in the

11   light most favorable to the prosecution, any rational trier of fact could have found the essential

12   elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

13   (1979).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could

14   reasonably support a finding of guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d

15   978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  A petitioner in a federal habeas

16   corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used

17   to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262,

18   1274, 1275 & n.13 (9th Cir. 2005).  In order to grant the writ, the habeas court must find that the

19   decision of the state court reflected an objectively unreasonable application of *Jackson* and

20   *Winship* to the facts of the case.  *Id.*

21       The court must review the entire record when the sufficiency of the evidence is

22   challenged in habeas proceedings. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

23   *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987).  It is

24   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

25   reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  If the trier

26   of fact could draw conflicting inferences from the evidence, the court in its review will assign

the inference that favors conviction. *Turner v. Calderon*, 281 F.3d 851, 881-82 (9th Cir. 2002).
The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but
whether the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455,
458 (9th Cir. 1991). The federal habeas court determines the sufficiency of the evidence in
reference to the substantive elements of the criminal offense as defined by state law. *Jackson*,
443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

### c. **Analysis**

Viewing the evidence in the light most favorable to the verdict, and for the reasons
expressed by the state appellate court, there clearly was sufficient evidence from which a rational
trier of fact could have found beyond a reasonable doubt that petitioner was guilty of counts 1-
11, 14-23, and 31. The state appellate court identified the correct legal standards and carefully
considered the evidence introduced at petitioner's trial. The conclusion of the state court that
sufficient evidence supported petitioner's conviction on these counts is not contrary or an
unreasonable application of United States Supreme Court authority. Accordingly, petitioner is
not entitled to relief on his claims of insufficient evidence.

### 5. **Ineffective Assistance of Counsel**

Petitioner claims that his trial and appellate counsel rendered ineffective assistance.
These claims were raised for the first time in petitioner's application for a writ of habeas corpus
filed in the California Court of Appeal and California Supreme Court. Lodg. Docs. 19, 21. Both
courts summarily denied petitioner's claims. Lodg. Docs. 20, 22. Under these circumstances,
this court must independently review the record to determine whether habeas corpus relief is
available under section 2254(d). *Delgado*, 223 F.3d at 982. After setting forth the applicable
legal standards, the court will analyze petitioner's claims of ineffective assistance of counsel in
turn below.

////

////

1        a.  **Legal Standards**

2        The Sixth Amendment guarantees the effective assistance of counsel.  The United States

3    Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*

4    *v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a

5    petitioner must first show that, considering all the circumstances, counsel's performance fell

6    below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 687-88.  After a

7    petitioner identifies the acts or omissions that are alleged not to have been the result of

8    reasonable professional judgment, the court must determine whether, in light of all the

9    circumstances, the identified acts or omissions were outside the wide range of professionally

10   competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a

11   petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*,

12   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

13   counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at

14   694.  A reasonable probability is "a probability sufficient to undermine confidence in the

15   outcome."  *Id.  See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981

16   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

17   deficient before examining the prejudice suffered by the defendant as a result of the alleged

18   deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

19   sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955

20   (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

21       In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption

22   that counsel's performance falls within the 'wide range of professional assistance.'"  *Kimmelman*

23   *v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  There is in

24   addition a strong presumption that counsel "exercised acceptable professional judgment in all

25   significant decisions made."  *Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466

26   U.S. at 689).  However, that deference "is predicated on counsel's performance of sufficient

1   investigation and preparation to make reasonably informed, reasonably sound judgments."

2   *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

3         The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

4   *Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

5   However, an indigent defendant "does not have a constitutional right to compel appointed

6   counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

7   professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751

8   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  *Id.*  Otherwise, the

9   ability of counsel to present the client's case in accord with counsel's professional evaluation

10  would be "seriously undermined."  *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th

11  Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

12  is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

13  meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a

14  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

15  to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this

16  context, petitioner must demonstrate that, but for counsel's errors, he probably would have

17  prevailed on appeal.  *Id.* at 1434 n.9.

18        **b.  Trial Counsel**

19        Petitioner raises numerous claims of ineffective assistance of trial counsel in a lengthy

20  argument that is divided into three "claims" describing myriad alleged failures by counsel.  Pet.

21  at 15-28.  The court will discuss each of these claims below.

22        **1.  Deficiencies in Charging Documents**

23        Petitioner first claims that his trial counsel improperly failed to object to the prosecutor's

24  use of "false testimony," inadmissible evidence, and charges that were "time barred."  *Id.* at 15.

25  Petitioner's claim of "false testimony" and "inadmissible evidence" appear to refer to an arrest

26  warrant issued on December 19, 1997, and the filing of a complaint on that same date, which

1    alleged, among other things, that petitioner had violated Cal. Penal Code § 12021(A)(1),

2    possession of a firearm by a felon.  *Id.*, Ex. 1 at 1; CT at 1.  Petitioner is apparently arguing that

3    any allegation that he was a "felon" is false, that statements in a police report to the effect that

4    petitioner had a prior felony conviction were false, and that "at best" he had only a prior

5    misdemeanor conviction.  Pet. at 15-18; Traverse at 44-46.  Petitioner also alleges that there was

6    a "scheme or conspiracy of charging a prior felony conviction" that was used, in part, to

7    extradite him back to the United States from Mexico.  Pet. at 16-17.  In essence, petitioner is

8    arguing that all references to a prior felony conviction were "false testimony."  *Id.* at 15-28.

9         Petitioner also contends that most of the counts against him were "time barred" because

10   they were charged in an amended complaint filed in 2000 that was dated more than one year

11   after the 1996 "original report."  *Id.* at 17.  The 2000 amended complaint dropped the charge of a

12   violation of Cal. Penal Code § 12021(A)(1), which petitioner characterizes as the "suppression

13   of evidence" in order to "cover up" the prior error in charging petitioner as a felon.  *Id.* at 18.

14   Petitioner also appears to argue, as he did in one of his previous claims, that the admission of

15   evidence of uncharged acts of child molestation violated the Ex Post Facto Clause and possibly

16   the Double Jeopardy Clause.  *Id.*  Petitioner is apparently alleging in the instant petition that his

17   trial counsel rendered ineffective assistance in failing to investigate and challenge these matters.

18        Petitioner has failed to demonstrate deficient performance or prejudice with respect to

19   these claims of ineffective assistance of trial counsel.  First, the charge of being a felon in

20   possession of a firearm was dropped and petitioner was not convicted of that crime.  Trial

21   counsel was certainly not deficient in failing to challenge a charge that was later dropped.  Nor

22   was there any reference during trial to petitioner's prior misdemeanor conviction.  Second,

23   notwithstanding petitioner's allegations with respect to his prior conviction, he has failed to

24   demonstrate that his extradition proceedings or his arrest were unlawful or invalid.  *A fortiori,*

25   petitioner's trial counsel was not ineffective in failing to challenge these matters.  Further, for

26   reasons discussed above, petitioner has failed to demonstrate that the charges against him were

1  "time barred" or the result of a cover-up, or that the admission into evidence of prior acts of

2  molestation against other victims violated the Ex Post Facto Clause.  For this reason, petitioner is

3  unable to establish prejudice with respect to his claim that his trial counsel should have

4  investigated or challenged these matters.  There is no evidence the result of the proceedings

5  would have been different had petitioner's trial counsel raised these challenges to his conviction.

6          For all of these reasons, petitioner is not entitled to relief on these claims.

7                              2.   **Failure to Call Witnesses**

8          In the next category of this claim, petitioner argues that his trial counsel rendered

9  ineffective assistance in failing to call specific witnesses at his trial.  Pet. at 19-25.  Those

10  witnesses are the following:

11  ***Carol Burch***

12          Sheriff's Deputy Carol Burch wrote a report in support of the December 19, 1997 arrest

13  warrant described above, in which she stated that petitioner had "a $250,000 Felony warrant for

14  his arrest stemming from the prior listed cases, and has a prior conviction of 288 PC in Tehama

15  County from March 1967."  Pet., Ex. 2 at 2.  Petitioner contends that Ms. Burch knew or should

16  have known that these allegations were false.  Pet. at 19; Traverse at 44-46.  He argues that his

17  trial counsel should have called her as a witness prior to trial in order to "establish all relevant

18  facts" and to show that the warrant for his arrest was improperly issued.  *Id.*  Petitioner also

19  appears to contend that Ms. Burch's statement in the report "led to admission of inadmissible

20  uncharged ex-post time barred charges" and "double jeopardy."  *Id.* at 20.

21          Petitioner has failed to demonstrate prejudice with respect to this claim.  There is no

22  evidence Ms. Burch would have agreed to testify at petitioner's trial, that the allegations

23  contained in her report are knowingly false, or that she would have testified as petitioner

24  suggests.  *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective

25  assistance because of counsel's failure to call a witness where, among other things, there was no

26  evidence in the record that the witness would testify); *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th

1    Cir. 2001) (no ineffective assistance where petitioner did "nothing more than speculate that, if

2    interviewed," a witness might have given helpful information); *Dows v. Wood*, 211 F.3d 480,

3    486 (9th Cir. 2000) (no ineffective assistance of counsel where there was no evidence in the

4    record that an alibi witness actually existed and petitioner failed to present an affidavit

5    establishing that the alleged witness would have provided helpful testimony for the defense);

6    *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice

7    prong of ineffective assistance claim because he offered no indication of what potential

8    witnesses would have testified to or how their testimony might have changed the outcome of the

9    hearing).  The *Strickland* standard "places the burden on the defendant, not the State, to show a

10   'reasonable probability' that the result would have been different." *Wong v. Belmontes*, ___ U.S.

11   ___, 130 S. Ct. 383, 390-391 (2009) (quoting *Strickland*, 466 U.S. at 694).  Petitioner has failed

12   to meet that burden with respect to this ineffective assistance of counsel claim.

13   ***Janet Breshears***

14          Petitioner claims that his trial counsel rendered ineffective assistance in failing to

15   competently cross-examine Janet Breshears during a hearing on pretrial motions regarding the

16   admissibility of petitioner's prior acts of sexual molestation.  Pet. at 20.  Petitioner states that his

17   trial counsel, or the court, was just about to ask Ms. Breshears a question when the trial court

18   called a recess.  *Id.*  According to petitioner, Ms. Breshears left the courthouse during this break

19   and did not return.  *Id.*  Petitioner faults his trial counsel for failing to call Ms. Breshears back to

20   the witness stand to complete his questioning, or to allow the court to complete its questioning of

21   this witness.  *Id.*; Traverse at 58.

22          The state court record reflects that Janet Breshears was called as a witness by petitioner's

23   counsel to establish facts relevant to the timing of discovery provided to the defense with regard

24   to petitioner's 1967 prior conviction.  RT at 43-63.  After the prosecutor and the court questioned

25   Mr. Breshears, she was cross-examined by petitioner's counsel.  *Id.*  She was then allowed to

26   step down, but the judge asked her a few clarifying questions after she had left the witness stand.

1   *Id.* at 62-63.  After the trial court issued a ruling on several issues, petitioner's counsel stated, "I

2   just have one question of my client."  *Id.* at 65.  At that point the court took a recess.  *Id.*  Ms.

3   Breshears left the courtroom and did not reappear as a witness.

4          Petitioner has failed to demonstrate prejudice, or that the result of the proceedings would

5   have been different had his trial counsel recalled Ms. Breshears to the witness stand.  Although

6   petitioner's counsel wanted to ask petitioner a question, there is no indication from the record

7   that counsel had any further questions for Ms. Breshears.  Nor is there evidence that the trial

8   judge was unable to complete his questioning of Ms. Breshears.  On this record, there is no

9   evidence petitioner was denied the effective assistance of counsel or the right to confront Ms.

10  Breshears.  Accordingly, he is not entitled to relief on this claim.

11  **John Villaneda**

12         The following evidence was admitted into evidence at petitioner's trial by stipulation:

13                 . . . the parties stipulate that John Villaneda is a police officer in
                   the State of Arizona.  On July 25th of the year 2000, while
14                 working with the Mexican authorities, he located a person who
                   was claiming to be John Robert Justice in the country of Mexico.
15                 Through further investigation and fingerprint analysis, it was
                   determined that John Robert Justice was actually Robert Elmer
16                 Barber.  That John Villaneda with the assistance of the Mexican
                   authorities arrested and brought Robert Elmer Barber back into the
17                 United States.  The parties further stipulate that John Villaneda
                   would identify Robert Elmer Barber.
18

19  RT at 233, Pet., Ex. 9.  Petitioner claims that: (1) Mr. Villaneda actually arrested petitioner on

20  July 6, 2000, not on July 25, 2000; (2) Mr. Villaneda did not have an arrest warrant; (3) the

21  extradition was illegal because "Arizona had no legal jurisdiction in Mexico;" and (4) the

22  stipulation is "constitutional barred for lack [of] a certified statement from Mr. Villaneda in

23  support of his alleged stipulated statement."  Pet. at 22; Traverse at 59.  Petitioner also alleges

24  that Mr. Villaneda's testimony might have had an impact on whether the statute of limitations

25  expired while petitioner was in Mexico.  Traverse at 59-60.  Petitioner states that he asked his

26  trial counsel to call Mr. Villaneda as a witness at trial but counsel declined to do so.  Pet. at 22.

36

1   Petitioner claims that counsel's failure to call Mr. Villaneda constitutes ineffective assistance.

2        Even if these allegations constitute deficient performance, petitioner has failed to

3   demonstrate prejudice.  There is no reasonable probability that the result of the proceedings

4   would have been different had counsel called Mr. Villaneda as a witness at trial.  Trial counsel's

5   failure to call this witness regarding petitioner's arrest in Mexico and extradition to the United

6   States does not create a reasonable probability of a different result so as to undermine confidence

7   in the outcome.  *See Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990).  Accordingly, petitioner

8   is not entitled to relief on this claim.

9   **Doris Willabella Gurr**

10        The following evidence was admitted into evidence at petitioner's trial by stipulation:

11            Dorris Gurr, ladies and gentlemen, it's stipulated if called to testify
               would testify that on January 7th, 1997, Robert Barber borrowed

12            Dorris Gurr's truck to go to the San Francisco Bay Area where he
               told her a friend of his was having emergency open heart surgery.

13            Robert Barber drove the truck to Mexico.

14   RT at 232-33.  Petitioner states that he asked his trial counsel to call Ms. Gurr as a witness but

15   counsel failed to do so.  Pet. at 22.  He explains that Ms. Gurr would have "told true facts as to

16   the young men and boys that worked for . . . petitioner."  *Id.*  Petitioner also states Ms. Gurr

17   would have testified that petitioner tried to return her truck, and that petitioner employed young

18   girls and adults in his business, as well as young boys.  *Id.*

19        Petitioner's vague allegation that Ms. Gurr could have testified about "true facts"

20   regarding the persons in petitioner's employ are insufficient to establish deficient performance or

21   prejudice.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations

22   which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting

23   *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).  Even assuming *arguendo* that Ms. Gurr would

24   have testified petitioner tried to return her truck and that he employed adults and young girls,

25   counsel's failure to introduce this testimony does not undermine confidence in the outcome of

26   petitioner's trial.  Accordingly, petitioner is not entitled to relief on this claim.

**Kim Graeber**

The following evidence was admitted into evidence at petitioner's trial by stipulation:

> The parties stipulate Kim Graeber was the stepdaughter of Robert
> Barber, period.  On January 14th, 1997, Robert Barber called her
> and said he was in Mexico and was not returning home, period.
> He requested that she pack all his personal belongings into his
> motor home and that he would make some arrangements to have
> them picked up, period.  On January 17th, 1997, she arrived at his
> house.  Molded food – comma, molded food was still on the stove.
> The parties further stipulate that Exhibit 6 is a letter found by Kim
> Graeber in the glove box of Robert Barber's car.  That the letter
> was written by Robert Barber.  It was found after Robert Barber
> left the Redding area in January of 1997.

RT at 234-35.

Petitioner states that Ms. Graeber could have "established truth of facts as to evidence admissible and inadmissible;" could have testified that petitioner hired young girls to work for him and had tried to return Ms. Gurr's truck to her; and that petitioner was a loving stepfather. Pet. at 23.  Petitioner states that he asked his trial counsel to call Ms. Graeber as a witness but he declined, and he complains that Graeber's stipulation was "admitted without challenge."  *Id.*

Petitioner's vague allegations regarding the proposed testimony of Ms. Graeber are insufficient to support this claim.  *Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26.  In addition, petitioner has failed to demonstrate that the result of the proceedings would have been different had Kim Graeber testified as petitioner suggests.  Accordingly, he is not entitled to relief.

**Steven, David, and Melissa Davis**

Petitioner claims that his trial counsel rendered ineffective assistance in failing to call Steven, David, and Melissa Davis as witnesses at his trial. Pet. at 23-24.  He states that Steven and David Davis worked and went on camping trips with him and could have "cast doubt upon the total alleged sexual activity."  *Id.*  Melissa Davis is the mother of Steven and David and also a young daughter who worked for petitioner as well.  *Id.* at 24.  Petitioner alleges that Melissa Davis could have testified that she had heard "rumors" about one of the complaining witnesses.  *Id.*

38

1    Petitioner provides evidence that Melissa Davis brought Steven and David Davis to the

2    police station for an interview with a police investigator and that both boys "denied any sexual

3    contact between [petitioner] and themselves." Pet., Ex. 3 at 11-12.  However, David Davis also

4    told the investigator that other victims had told him "portions of the sexual assault circumstances

5    that happened to them," that petitioner kept several firearms in his home, that petitioner had

6    given David money for no apparent reason, and that petitioner "would often make comments

7    about penises." *Id.* at 12.  Steven Davis informed the investigator that petitioner "often makes

8    comments about penises and 'jacking off'" and that petitioner "had the Playboy channel on

9    television and that many of the kids have watched this." *Id.*  Melissa Davis informed the

10   investigator that she was aware of an incident wherein petitioner was accused by another person

11   of "child molest" and petitioner "made implicating statements and apologized." *Id.* at 13.  Under

12   these circumstances, petitioner's trial counsel had a legitimate tactical reason not to call any of

13   these three persons as witnesses at trial.  Further, trial counsel's failure to call these witnesses

14   does not undermine confidence in the outcome of the proceedings.  Accordingly, petitioner is not

15   entitled to relief on these claims.

16   **Lisa Roberson**

17   Petitioner claims that Lisa Roberson was "a key witness from day one" but that his trial

18   counsel improperly failed to call her as a witness at trial. Pet. at 24.  Petitioner explains:

19               She made the first report of 12-17-96 . . . that made accusation
            about [petitioner], making sexual passes at Lisa . . . IAC . . . for not
20          calling this witness as requested.  She would have told of living at
            [petitioner's] home with boyfriend and having his baby, and
21          adopted out.  Reason for scheme against [petitioner].  The right to
            confront was denied.

22

23   *Id.*  These cryptic allegations are vague and conclusory and are insufficient to establish deficient

24   performance or prejudice.  Further, petitioner has failed to establish that the result of the

25   proceedings would have been different had his trial counsel called Ms. Roberson as a witness.

26   Accordingly, this claim of ineffective assistance of counsel should be denied.

39

**John Arnold**

Petitioner claims that his trial counsel rendered ineffective assistance in failing to call John Arnold as a witness.  Petitioner explains that: (1) Mr. Arnold is a "long time friend;" (2) he "went fishing and camping with the boys and [petitioner]; (3) he worked for petitioner, along with "the boys and girls and adults;" (4) he "went to Mexico for Ms. Gurr to recover her pick up truck;" and (5) he would have established petitioner's "true character."  Pet. at 24.

Petitioner's unsupported statements are insufficient to demonstrate deficient performance or prejudice with respect to this claim.  Further, there is no evidence that Mr. Arnold would have agreed to testify on petitioner's behalf or that his testimony would probably have led to a different outcome at trial.  Accordingly, petitioner is not entitled to habeas relief.

**Vicki Chavez**

Petitioner also claims that his trial counsel rendered ineffective assistance in failing to call Vicki Chavez as a witness at his trial.  Petitioner explains that Ms. Chavez was interviewed as a possible witness by the defense investigator.  *Id.* at 25.  According to petitioner, Ms. Chavez would have testified that she was "raised" with petitioner's older children; she never saw any abuse taking place; and her son and daughter had spent time with petitioner and that no molestation occurred.  *Id.*

It appears from petitioner's allegations that, although the defense investigator interviewed Ms. Chavez, petitioner's trial counsel decided not to call her as a witness at trial. Petitioner has failed to establish that this tactical decision was unreasonable or outside the wide range of professional legal assistance.  "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."  *United States v. Nersesian*, 824 F.2d 1294, 1321 (2nd Cir. 1987).  Reasonable tactical decisions, including decisions with regard to the presentation of the case, are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  There is no evidence that trial counsel's decision not to call Vicki Chavez as a witness was unreasonable.  Accordingly,

1    petitioner is not entitled to relief on this claim.

2    **Richard Hodges**

3    Petitioner claims that his trial counsel rendered ineffective assistance in failing to call

4    Richard Hodges as a witness at his trial.  Pet. at 25.  Petitioner explains that Mr. Hodges is the

5    father of one of his "alleged victims."  *Id.*  He states that Mr. Hodges worked with petitioner and

6    stayed in his home and "went camping with [petitioner] and all the boys all the time without any

7    trouble."  *Id.*  He also states that Mr. Hodges "wrote a letter at sentencing."  *Id.*  Petitioner states

8    that he asked his trial counsel to call Mr. Hodges as a witness but he was never called.  *Id.*

9    As in the claims described above, petitioner has failed to demonstrate either deficient

10   performance or prejudice with respect to this claim.  There is no evidence that Mr. Hodges'

11   testimony would have resulted in a different outcome at trial.  Accordingly, petitioner is not

12   entitled to relief on this claim.

13   ### 3.  Failure to Request Proper Jury Instructions

14   The record reflects that petitioner's jury was given an instruction defining "sodomy."  RT

15   at 538.  Petitioner claims that this was "misleading . . . without guidance of its application."  Pet.

16   at 27.  He argues that "the jury could only have speculated the petition[er] was charged with the

17   act of sodomy, and that by testimony in alleging sodomy the act had been proven beyond a

18   reasonable doubt."  *Id.*  In the traverse, petitioner explains:

19           The jury was subjected to uncharged alleged acts of sodomy;
             through out the prosecutions questioning: this subjected the jury to
20           presume the uncharged sodomy was an act of conviction; without a
             full and proper instruction on sodomy: the Sixth Amend. was
21           violated for lack of information. . . .  Denied due process in that
             counsel failed to challenge the alleged acts of sodomy that where
22           [sic] clearly outside the charges of indictment.  Counsel failed to
             ensure proper jury instructions where given as to uncharge[d]
23           sodomy.

24   Traverse at 64.

25   The state court record reflects that several witnesses, including the victims of petitioner's

26   uncharged prior acts of molestation, testified that petitioner had committed "sodomy."  *See, e.g.,*

41

1    RT at 158-59, 198-200, 206-08, 227-28.  Petitioner was charged with three counts of continuous

2    sexual abuse of a child pursuant to Cal. Penal Code § 288.5, which required proof that he

3    engaged in "three or more acts of substantial sexual conduct or three or more acts of lewd or

4    lascivious conduct with a child under the age of 14 years."  *Id.* at 530.  The term "substantial

5    sexual conduct" is defined as "penetration of the vagina or rectum by the penis of the offender

6    . . ."  *Id.*  The jury was fully instructed on all of the charges against petitioner, including the

7    definitions of terms within those charges.  As noted above, the jury was also instruction on the

8    definition of "sodomy."  Petitioner is apparently alleging that unless the jury was specifically

9    instructed as to how to apply the instruction defining "sodomy," they would assume that he had

10   been separately charged with that crime.  He argues, "The appeal court believed and shows

11   sodomy had been committed on D.J. some 50 times.  Yet, this act, or acts where [sic] never

12   charged, nor was there physical evidence to support the charging of sodomy."  Pet. at 27.

13   Petitioner argues, "this cause of conviction must be reversed for failing to instruct the jury on

14   sodomy application and the instruction of sodomy instruction in jury deliberation as uncharged

15   acts."  *Id.* at 28.

16        Petitioner's claim in this regard should be denied.  Petitioner's defense counsel did not

17   render ineffective assistance in failing to ensure that the jury was specifically instructed on how

18   to interpret the jury instruction on sodomy with respect to the charged offenses or the evidence

19   of prior uncharged offenses.  There is no evidence the jury was confused about this issue or that

20   they believed petitioner had been charged with crimes in addition to those that were set forth in

21   the instructions.  Petitioner has failed to demonstrate either defective performance or prejudice

22   with respect to this claim.  Accordingly, he is not entitled to habeas relief.[18]

23

24        [18]   In his traverse, petitioner states that the "cumulative effect" of the errors made by his
     trial counsel violated his constitutional rights.  Traverse at 23.  He also makes several other
25   claims of error that are not contained in the petition before this court.  As noted above, a traverse
     is not the proper pleading to raise additional grounds for relief.  Even if these claims were
26   properly raised, they should be denied.  Petitioner is not entitled to relief on a claim of

42

1                    c.  **Appellate Counsel**

2          Petitioner's final claim is that his appellate counsel rendered ineffective assistance

3     because of his failure to raise meritorious claims, including claims of ineffective assistance of

4     trial counsel.  Pet. at 14; Traverse at 37-43.  As described above, this court has concluded that all

5     of the claims raised in the instant petition lack merit.  Appellate counsel's decision to press the

6     claims he chose to raise on appeal was "within the range of competence demanded of attorneys

7     in criminal cases."  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  Petitioner has also failed

8     to demonstrate that he probably would have prevailed if his appellate counsel had raised any

9     other claims.  He has therefore failed to establish prejudice.  *Miller*, 882 F.2d at 2434 n.9.

10             **6.  Evidentiary Hearing**

11         Petitioner requests an evidentiary hearing on his claims.  The circumstances warranting

12    an evidentiary hearing are set out in 28 U.S.C. § 2254(e)(2), which provides as follows:

13              (e)(2) If the applicant has failed to develop the factual basis of a
              claim in State court proceedings, the court shall not hold an
14             evidentiary hearing on the claim unless the applicant shows that-

15                  (A) the claim relies on-

16    ////

17    _____

18    cumulative error.  "The fundamental question in determining whether the combined effect of
      trial errors violated a defendant's due process rights is whether the errors rendered the criminal
19    defense 'far less persuasive,' *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), and thereby
      had a 'substantial and injurious effect or influence' on the jury's verdict."  *Parle v. Runnels*, 505
20    F.3d 922, 927 (2007) (quoting *Brecht*, 507 U.S. at 637).  This court has addressed each of
      petitioner's claims of ineffective assistance of trial counsel and has concluded that no error of
21    constitutional magnitude occurred at his trial in state court.  The court also concludes that the
      alleged errors, even when considered together, did not render petitioner's defense "far less
22    persuasive," nor did they have a "substantial and injurious effect or influence on the jury's
      verdict."  Accordingly, petitioner is not entitled to relief on any such claim.  Nor is he entitled to
23    relief on other claims raised for the first time in the traverse; to wit, that his trial counsel should
      have requested a preliminary hearing, objected to flaws in the charging documents or the verdict
24    forms, called favorable witnesses in addition to those specifically named in the petition,
      conducted more effective cross-examination of witnesses not named in the petition, objected to
25    the admission of prior uncharged acts on federal constitutional grounds, failed to present
      mitigating evidence at the sentencing hearing; or that the prosecutor committed misconduct.
26    Petitioner has failed to demonstrate prejudice with respect to those claims.

                                                    43

(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense;

28 U.S.C. § 2254(e)(2).

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A federal court must take into account the AEDPA standards in deciding whether an evidentiary hearing is appropriate. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). A petitioner must also "allege[] facts that, if proved, would entitle him to relief." *West v. Ryan*, No. 08-99000, 2010 WL 2303337, at *6 (9th Cir. June 10, 2010); *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir. 2000).

The court concludes that no additional factual supplementation is necessary and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. Petitioner has failed to raise factual disputes that, if decided in his favor, would present a colorable claim. *West*, 2010 WL 2303337, at *7. In addition, for the reasons described above, petitioner has failed to demonstrate that the state courts' decision on his claims is an unreasonable determination of the facts under § 2254(d)(2). *See Schriro*, 550 U.S. at 481. Accordingly, an evidentiary hearing is not necessary or appropriate in this case.

////

////

////

**III.     Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:   September 15, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE